25-3157, Schmidt v. Huff. Counsel, are you ready to proceed? I am, Your Honor. Yes. Thank you. Go ahead. May it please the court, my name is Greg Goheen. I represent the defendants in this appeal. I would like to reserve three minutes for rebuttal to the extent I can do so. The present appeal involves the denial of a motion to dismiss that was filed on behalf of several school district employees, which was based on qualified immunity. That's the sole issue that's in front of the court today. Specifically, Plaintiff, who is a parent of a current and former student at a Kansas high school, asserts several claims pursuant to 42 U.S.C. 1983 for damages against certain school officials and their individual capacities for alleged violations of her rights under the First and Fourteenth Amendments to the United States Constitution. The defendants in this case are as follows. Defendant Huff is a superintendent of schools. He is alleged to have been the individual who determined to issue a letter to Plaintiff that's the main issue in this case. And that letter advised Plaintiff in February of 2025 that she was no longer allowed to be on school district property due to some conduct that she engaged in of being in areas of the high school off limits to parents during the evening without permission, moving certain personal items, taking pictures that she had submitted for TikTok to be posted and created a disruption to the school environment. Dr. Huff advised Plaintiff she would not be allowed to be on school property or school events for approximately four and a half months following this incident or until June 30th of 2024 or 2025, rather, I believe. In any event, the district court referred to this as the social media incident. There are two incidents that are involved in this lawsuit. Defendant Booth is the assistant superintendent of schools. His only alleged conduct in this case is that he advised local law enforcement on the no superintendent of schools at the superintendent's direction. Defendant Bell is the high school principal. Defendant Bell was tasked with receiving requests from Plaintiff after the issuance of this letter by the superintendent and determining whether her request to attend certain events or certain or be on school property would be were to be granted. There are no alleged incidents where Plaintiff requested to be on school property or attend an event after this issuance of this letter that were denied. Defendant Chapman is a former school board member and the allegations against him relate to a different incident. The allegations against him relate to a school board meeting that occurred approximately six months or seven months, rather, before the incident in August of 2024. At that meeting and surrounding that meeting, Plaintiff had come to the school board and made comments during open session regarding disagreements with certain school district or school books that were in the school library and read content from those school books to the board during open session. She and Defendant Chapman got engaged in several communications, including during the open comment where Defendant Chapman was critical of Plaintiff's approach, disagreed with her position, and voiced those concerns to her both in the school board meeting as well as in some online and email communications following that meeting. Counsel, thank you for going through the facts attendant to each defendant. I think that's helpful. Let me ask you about Defendant Chapman. So, can you speak to what it is that you think the district court got wrong and be specific as to each prong of the qualified immunity analysis, specifically as to Chapman? So, the starting point is that Chapman, as the court's aware, this is on interlocutory appeal. So, this is not to challenge the court's interpretation of the factual conclusions that it reached out of the complaint or any disagreements as to the factual conclusions. However, the second threshold issue of the qualified immunity analysis, there has to be established law that exists that would put the government official on notice that his or her actions violated the Constitution. And that case law has to be particularized to the facts or circumstances involving the complainant issue. Part of the issue or the problem I have with Defendant Chapman and the dial summary judgment that relates to him is he's essentially being, he's not alleged to have done anything actually to prohibit plaintiff from engaging in free speech. He's not actually alleged to have done anything in retaliation for her having engaged in free speech. In fact, the retaliation claim was dismissed by the district court. What he's alleged to have done essentially is to voice his opposition to plaintiff's comments and engage in the sort of back and forth discussion with her both on social media and in email exchanges. Wasn't Miss Schmidt's microphone muted for the portion of her remarks? I mean, I think that's what the complaint alleges and that's what the district court found. And I'd like to know your thoughts on how we should be thinking about that. Is it your position that Defendant Chapman didn't mute her mic so he hasn't engaged in the kind of particularized conduct we're looking for under 1983? Yeah, there's no allegation in my recollection from the petition that Defendant Chapman had anything to do with her mic being muted or not being turned on correctly. And she was allowed to make comments. He's only alleged to have engaged in, first of all, making his own comments during the same meeting. And then I think he argued with her a little bit during the course of the meeting, perhaps at the end of her comments, as well as post after the meeting, engaging the social media back and forth and the email back and forth. But I don't believe there's any allegation that he specifically was involved in or had anything to do with the fact that her mic may have not been operating correctly during that meeting. And that goes to the whole issue of an individual official is only responsible for his or her conduct. And absent some allegation that he was involved in that or did that on purpose or that he somehow had something to do with that, the only acts he's alleged to engage in are his own speech, which we contend, and contended before the district court, are protected in their own right under the U.S. Constitution. And so you can't really have somebody being held liable for voicing their own opposition or their own speech, even if it's contrary to the speech that's being presented by somebody else. And even if it's in an argumentative fashion, even if it's sort of this back and forth argument, say they've gotten to a knock down, drag out. Who is the appropriate defendant? And I mean, I take it you don't disagree because the complaint alleges that Ms. Schmidt was silenced effectively. She was not heard when she wanted to speak at the board meeting. And so you don't disagree with that, right? I do, only in the sense that although her mic, her allegations of the mic was muted in the mic, there clearly was an issue with the mic. You can hear that. But the recording of the meeting does exist. It was on broadcast. You can hear what she is saying during the meeting. Those present could hear what she was saying. And it is retained on the audio and video recording. OK, well, let's assume that you let's assume you could not hear her. In other words, let's assume that there was a constitutional violation here. Your position is that the law is not particular or specific enough to satisfy the clearly established prong? Or is it your position that the wrong defendant is sued here, that it's not Chapman's? He didn't engage in any unconstitutional conduct. I think it's that he didn't engage in any unconstitutional conduct himself. And he's the defendant who's named in this case. And he's the one who we've asserted qualified immunity on his behalf in connection with this dismissal motion. Was he conducting the meeting? He was not. He was not the chair of the meeting. He was not the president. And you're saying there's no allegation in the complaint that he had anything to do with the mic? That's correct. Did I hear you say, I'm sorry, that you're not making a lack of clearly established argument? No, I am. Yes, you are. In answer to Judge Rossman, I thought I heard you say, oh, we're focused on the, was there a violation? If I did, I misspoke. And I apologize. I didn't mean to say that. You were saying that with respect to the microphone issue, though, weren't you? Your focus on the microphone issue is that he didn't do anything, not that muting the mic. Right. My focus on the microphone issue is he's not alleged to have had anything to do with the microphone itself. The allegations against him, this is why it becomes important from the particularization of facts as to each defendant, is that for qualified immunity purposes, what he's alleged to have done, I'm not aware of any case law that prohibits or would find him to have violated the Constitution based on what he is alleged to have done in the complaint. Are we clear on that? I don't want to make sure I'm misleading the court in some way in the argument. We've got other defendants.  As it relates to the other defendants and this other issue regarding the incident that the court referred to as the social media incident, the issue here, again, is really focused on whether there's any clearly established law that, under the context and circumstances alleged that relate to what occurred in this case, that Defendant Huff, Defendant Booth, or Defendant Bell have done anything that the law would demonstrate to them as school officials would be clearly established as violating constitutional rights. And we don't believe there's been any case law that's been cited by either the district court or by plaintiff in connection with any arguments made to the court that does do that for purposes of qualified immunity. What is your understanding of what claims remain in the case? This is, I guess, a housekeeping question, but I was uncertain about that. Maybe you can help me with it. I think the district court, as to the retaliation claim, that was a primary focus of the district court's ruling for both Huff and Bell and Booth, but the court didn't seem to, at least as I read it, didn't seem to rule on some of the other claims in the case. So can you help me with that housekeeping matter? Yeah, I had the same issue when I was reading the district court's order, and I don't think it was intentional by the district court, but the district court clearly did focus on the retaliation claim. That was primarily what was discussed by the district court. I took that to mean, because there was no clear ruling, that the other claims are probably still live as well. And so include those as part of the overall argument on appeal that dismissal is warranted on qualified immunity as to any claims that remain against these individualized defendants. The district court did dismiss the school district, finding that the school district was not liable. For any of the claims and did clearly dismiss the retaliation claims related to defendant Chapman. But as I read the district court's order, it wasn't entirely clear to me what specifically was left in the case, other than it was clear that qualified immunity had been denied as related to these other defendants. As to these other defendants on the specific claims that the court reached, right? Correct. And I am past my three minute, I would like to reserve for rebuttal unless the court's got any specific questions that would like me to answer at this point. I have one more question. If that's all right, maybe maybe judge hearts will give you a little more time. No, you're fine. How should we be thinking about the district court's factual findings as they relate to the injunction? So, you know, in the district court's injunction order, there's specifically a couple of findings that I'm unsure what to do with. And I'd like your take on those. I mean, the district court says the defendants have failed to show plaintiff violated the law or any school policy. At the same time, the court says, well, schools have the right to control access to specific locations without implicating a liberty interest. So I guess the two questions are generally, what do we do with the findings made attendant to the PI? And specifically, what do you make of these findings that I just recited? Yeah, so let me try and break that into two points. And I'm going to run low on time. So if I go over time, please indulge me for a minute or tell me to stop. The first issue is the injunction order is interesting in the context of this case. It was a temporary injunction order. It was issued before we had filed and sought dismissal of the case based on our motions to dismiss. Interestingly, for a temporary injunction, there has to be a finding that there's a merits injunction was granted as to all defendants. And then the court turned around and after hearing the dismissal motion, dismiss the school district, which was one of the defendants finding that there weren't grounds for a claim against the school district. The other thing with the injunction is that obviously the injunction was in place to address the it had nothing to do with the board meetings and it had everything to do with the incident relating to the social media. And as it relates to the social media incident, it was primarily directed at the determination by Huff that she cannot attend school property events until June 30th. And so since that time has passed, that whole injunction is moved at this point as a separate matter. The findings, I think any findings in terms of an injunction hearing are always preliminary and they're always subject to reinterpretation and determination by the court based upon later evidence after evidence has been marshaled in a case. It's on a very shortened record. And so I don't know that those are binding necessarily on the court at all past the injunction hearing itself. Injunction can always be reconsidered. Those findings are not law of the case or anything like that. It can be reconsidered in a motion to dismiss facet. Ultimately, the dismissal that's being sought was purely directed at qualified immunity and purely directed at the pleadings in the case, which are set forth in the complaint itself. And I think that's what the court should focus on as it relates to those findings. Thank you. That's very helpful. Thank you, Mr. Baker. Thank you, Jay. Please, the court. Well, let's start with Chapman. The complaint simply says what Chapman did. And it said that Ms. Schmidt's microphone was muted. Favorable inferences. You can connect the dots. You ask if board member Chapman was presiding board member. No, he wasn't. But he stood up and took over the meeting and read his statement. And so that's his individual participation. He took it over. The other one, if you want us to draw an inference from the fact that he took it over, that he was responsible for the mic being turned off. Is that correct? I think you can make that favorable inference. Then what do you mean exactly by he took it over? It's one thing for him to speak for him for a minute or more. But did he in any other way show that he was? Sure. So here's how that works. You get three minutes. And so when and you get an allotted three minutes, Kerry Schmidt stands up. It's her time to speak. There's no provision in the public comment that hold it, Kerry Schmidt, before you start talking. Let me take over your three minutes and interject something that's going to chill your speech. That's not part of the process. They don't do that to speakers. But Chapman did that. So he read. He says, I kind of know what you're going to say, Kerry. And so let me muddy the water. Let me put you in a bad light. Let me say that you're a pervert. You get sexual pleasure out of reading what I think you're going to read. Now, that is viewpoint discrimination. That chills anybody. And let that be a lesson to all you parents that think you're going to come up here and read literature that's in our library. That has to do with his motive and his intent. Did she end up getting the full three minutes? Was the time given back to her? Actually, she fussed with them because she got muted. She says, nobody can hear what I'm saying. And as Judge Milgram said, the microphone was muted. Closed captioning was unavailable on the district's YouTube page. Said that Chapman's remarks demonstrated disagreed with plaintiff's views. And likely due to those views, he subjected plaintiff to less favorable treatment than other speakers. Namely, one of the things is he made his speech before she talked and put her in a bad light. You don't do that to other speakers. And then we say he muted her. So just with respect to the time she was afforded though, did she end up not being able to speak for three minutes? She could speak the three minutes. She didn't get the full benefit of what the public comment provision. Not because her time was restricted. Is that right? Let me make sure I understand. So she didn't get the benefit you're saying because of the comment that put her in a bad light. Did she also not get the benefit because she was restricted to less than three minutes? Did that happen? Was that even alleged? I don't believe we alleged she was cut off prior to the three minutes. Okay. That benefit she got, but it was skewed as I've said, which is she didn't get the benefit that other speakers get, which is you got an open mic. Everybody can hear you. You get closed captioning. And by the way, I'm not beat up before I get to talk. The defendants argue though that you have no clearly established law that the person, the official can be liable for putting someone in a bad light by speaking beforehand. Do you have any case law to support that proposition? Well, viewpoint discrimination. That's viewpoint discrimination. So one of the tools in a toolbox is I'm going to say bad things about you and that's viewpoint discrimination. Judge Melbourne said that's been clearly established for years and years. And it is. Counsel, can I stop you there? Sure. Haven't we said repeatedly that you can't simply say this is viewpoint discrimination in order for clearly established law to be established? You have to come up with something, a case that had some similar facts, something similar to what you're alleging, that just saying there's viewpoint discrimination is not specific enough. Can you help? Sure. Siemens speaks to, well, Siemens 1 and 2. Siemens 1 says that government may not deny a benefit to a person because of his constitutionally protected interest. So your inquiry is, did they deny a benefit to Kerry Schmidt? Well, they did. They did it over and over and over. And so, and that was because of the things that she said. Now we've called that viewpoint discrimination, but the principle set out in Siemens says that. In Siemens 2, where they came back and tried to get qualified immunity at summary judgment, the panel said at page 1030, school authorities may not penalize students for their speech when that speech is non-disrupted, non-unseen, and not school sponsored. The case then, this becomes a parent speech. So all the policy reasons that they have to impede student speech, would not apply. There's a case out of the Sixth Circuit, McElhaney v. Williams, 81F, 4th, 550, Sixth Circuit, 2023. That case, the court, Sixth Circuit, reverse qualified immunity, and hell, it was clearly established. School official may not retaliate against a parent for the content of his speech, criticizing school personnel. So this is a case where these individual defendants penalized Kerry Schmidt. So can I stop you there? I'm sorry, that's a Sixth Circuit case that you're signing? That is, but it lines perfectly with Siemens 1 and Siemens 2, which simply say, you cannot deny benefits to a parent or a student because of protected speech. And so everything that the defendants did in this case, Chapman did it because of her speech. She was reading protected speech books. Huff said he didn't like what she was saying. And then Booth and Bell, then I call it supersized. They filed police reports. They put more conditions on her to do what other parents could otherwise do. In fact, they went so far as to say that she couldn't even go to church on Sunday at a church on school premises. And Superintendent Huff said, oh, by the way, I'm going to extend this ban beyond gardener property to other school districts, which was incredible. He just said, Let me ask about those allegations. I'd like to focus on Mr. Booth. And what are the allegations regarding his participation in this alleged retaliation? He gave the ban police force. He filed a police trespass report and identified Ms. Sheehan as an offender, even though the complaint alleged no unlawful entry, no victim. You're trailing off. Could you speak more into the mic?  I'm sorry, Judge. Even though the complaint alleged no unlawful entry, no victim, no refusal to leave, no crime and no applicable policy violation. Let me say this. The complaint clearly said that Ms. Schmidt did not violate any policies. And that was confirmed in the injunction hearing when Superintendent Huff was handed all the policies, says identify any of that she violated. He couldn't identify one. This goes to Judge Rossman, your question about what to do with the injunction facts. It goes to plausibility. You look at the complaint and look at the favorable inferences. The injunction itself, the hearing will add or support plausibility to what we've alleged in the complaint. But you're going to look at that complaint. Okay, so Booth, the allegations against him, and correct me if I'm wrong, but my recollection is that the only allegations regarding his participation in this is that he forwarded or filed the complaint that went to the police department. Is that correct? Well, he filed a police report himself and he is the person that made the allegations. So like I recited, he gave Superintendent Huff false allegations. You're just saying those allegations. I want to make sure. Did he make false allegations or is it that the allegations didn't rise to the level of an offense? He filed a complaint alleging no crime. So he had committed a crime. Did he say anything in the complaint that was factually false? The conclusion you're saying was wrong because there was no crime. But did he say anything factually false in the complaint? Well, I would say he did misconstrued. He said there was no victim. He misconstrued exactly what she had done. You don't file a police report when no crime has been committed and no victim or anything like that. But the point is their judge, he is giving effect. He's putting something in addition to the Huff ban. He's putting police force and a trespass that he didn't have to do that. Huff didn't do it, but Booth did. So that would chill a person of speech. I want to focus on, not on the consequence of the complaint, but Booth's complicity in that. Did, does the complaint allege that Booth did this on instruction from the superintendent or the principal? I don't know how the complaint necessarily framed that. But if you're asking if it's just following orders, Booth did that act. He participates, that is his actions. So I don't know. But I'll get to the heart of this. I'm just trying to get your position on this. If you do something, but you don't have discriminatory intent, then you're not liable. And you're saying his, I'm sorry, go ahead. You'll never get to that on a motion to dismiss. Intent and motive judge is, I mean, maybe summary judgment. You don't think you have to allege any facts that would imply discriminatory intent? Sure, we've done that. We've done it with respect to Booth. Sure, he filed a police report and there was no crime. That you can infer from that, that he is, that is his actions. That is how he is participating. He knows that Huff, Superintendent Huff, has no policy that she violated. He is going to be the vessel, if you will. Is it relevant to his intent, whether he was instructed to do this or did it on his own initiative? Is that relevant to his intent? I don't think it is. I don't think it is. And you would have to give a favorable inference to Booth to say, to move that gauge on the other side. Maybe, and that's an issue of credibility. Was he motivated because he was instructed or was he, did he have to do it? Could he have refused and said to Huff, I don't want to do this. Don't make me file a police report. So the fact that he did it at a motion to dismiss, favorable inferences, discriminatory intent. Thank you. So, and- Council, what is the, we're talking about retaliation and there's retaliation claims alleged against all the defendants except for, well, for the Chapman one was dismissed. And you have three elements, right? In a retaliation claim, you have to show protected activity and the kind of government action that would chill and motive, right? So can we just, I'd like to have your position on the, on the retaliation claim in that structure. What do you contend is the protected activity here? Well, her protected speech. Okay, but with more specificity, I mean, based on what you've alleged in the complaint, is it that she took pictures? Is it that she sent pictures that were reposted? What is the protected speech exactly as alleged in the complaint? Public comment, she's protected speech. She's not yelling fire in the house. She's just reading books out of the library. That's protected. At the school, she took pictures of things available to students. She then took those photos, sent them to TikTok. That's protected. She didn't do anything. And so those are the protected things that she did. They weren't crimes. They didn't violate any policy. That's all protected. Now, so then that's the protected part of that equation. They tried to ascribe to her the idea that, well, you're responsible for what TikTok does. And Judge Malroom says, no, that's not fair. And there's no indication that Eve from the complaint that Carrie Schmidt wanted anybody to get in trouble with or to be targeted or anything like that. Didn't happen. And so the other protected, and so she was denied benefits because of that. They say it, that's what they say. They didn't say she wasn't, you know, whatever. So that's the protected part. The retaliation, she got adverse consequences up and down the line. That's retaliation. And it's all based on speech. Judge Malroom goes into it. He's talking about that. He said that he didn't like what she said. He didn't like what she posted. Finding images posted to a popular social media account offensive is insufficient reason to strip plaintiff of her rights to speak, associate, and exercise religion. It's unreasonable for a person acting in such a way that such conduct did not infringe upon plaintiff's first amendment rights. And that's all she did. And with that, she was banned from going to other benefits that other parents got to do, which was attend your child's graduation, attend your child's wrestling, all of those things. Can you get the benefit of speaking without getting slandered? All that chills speech. You're more than two minutes over your time. I'm sorry, Judge. I just wanted to make sure, does any member of the panel have any further questions? I'm good. Thank you. Yes. Thank you, counsel. Mr. Goheen, we'll give you another minute. Help if I turn the mic on, I guess. Sorry about that. Thank you, your honors. I just want to touch briefly on a couple of points made to try and get some clarity. One thing is it relates to this police report that Mr. Booth submitted to the law enforcement. Police reports get submitted to law enforcement for a variety of reasons, not necessarily always to report a crime. Obviously, if you're in a car accident, you file a police report. In Kansas, where you have a trespass that is going to attempt to be enforced by law enforcement, there first has to be an advisement to law enforcement that the person is prohibited from being on property. That's the purpose of the filing of the report with the police department. It has nothing to do with reporting a crime. Is that clear in the complaint? How do we know this? Well, the complaint just says that he filed a report with law enforcement. It doesn't say anything that was done untoward in terms of him falsifying information in the report. As counselors points out, he doesn't identify plaintiff as an offender in the report. He doesn't identify a crime in the report. He reports that she is not permitted on school property. And I think that's reflected. I thought that the trespass was attached to the complaint, but I may be mistaken about that. Very briefly, anything else you want to respond to? I don't think anything else, unless the court's got any questions for me. Okay, thank you, counsel. Case is submitted. Counselor, excuse me, I have a question for you, Mr. Goheen. That's an unusual name, at least. Maybe it's not in Kansas. When I was in school, the president of Princeton was a Goheen. Yes. Only very distantly, all the Goheens came into the United States that I'm aware of through Pennsylvania back prior to the Revolutionary War. And then a large number stayed in Pennsylvania area, including the former president of Princeton. My family, there were two brothers and a cousin that moved to Manhattan, Kansas sometime in the 1800s. And there's a handful of Goheens in the state of Kansas that are all resulting from that branch. Thank you. We'll shut down. Why don't the judges stay on a moment? We'll plan our conference. Thank you very much, counsel. Appreciate it.